RENDERED: SEPTEMBER 22, 2022
TO BE PUBLISHED

# Supreme Court of Kentucky

## 2021-SC-0351-DG

JUNE MCGAHA AND MARK MCGAHA                  APPELLANTS

ON REVIEW FROM COURT OF APPEALS
NO. 2019-CA-1752
RUSSELL CIRCUIT COURT NO. 14-CI-00364

V.

SUZANNE MCGAHA AND CLIFFMAN MCGAHA         APPELLEES

## OPINION OF THE COURT BY CHIEF JUSTICE MINTON

### REVERSING

Appellants bring this appeal to challenge a decision of the Court of Appeals that reversed the circuit court's order in a will-contest case denying Appellees' motion for leave to file an amended answer to assert a cross-claim and dismissing the underlying case. The Court of Appeals remanded the matter back to the circuit court for further proceedings, holding that the circuit court erred in denying Appellees' motion for leave to amend.

On discretionary review, we reverse the Court of Appeals' decision for failing as a reviewing court to give proper deference to the trial court's decision to deny Appellees leave to amend a pleading. In reaching this holding, we also hold that the Court of Appeals erred when it found that the district court lacked jurisdiction to probate the will at issue in this action. Accordingly, we

reverse the opinion of the Court of Appeals and reinstate the circuit court's order dismissing this action.

## I. FACTS AND PROCEDURAL BACKGROUND

At the time of his death, Leon McGaha was married to June McGaha, his second wife. Leon[1] had three adult children from his first marriage, Mark, Damon, and Suzanne McGaha, and a grandson, Cliffman "Cliff" McGaha.

In September 2013, Leon, who was in failing health, executed a Durable Power of Attorney (DPOA) naming June and Mark his attorneys-in-fact. According to some family members, Leon expressed a desire upon his passing to divide his estate equally among his grown children.

On April 3, 2014, Leon executed a will nominating June and Mark as co-executors of his estate. The will gave Leon's tire business, including real and personal property associated with it, to Mark. June was to receive the residence and farm where she and Leon lived, a farm bank account, and some personal property. The will bequeathed to Suzanne and Cliff part of the proceeds from the sale of cattle and some personal property. And the will made bequests for June's children from a prior marriage. June, Mark, and Suzanne shared equally under the will the division of the residual estate. Damon received nothing under the will.

---

[1] We refer to each member of the McGaha family by his or her first name for clarity.

2

On April 4, 2014, the DPOA was recorded. That same day, June, acting as Leon's attorney-in-fact, conveyed the real property associated with the tire business to Mark and Mark's wife.

Leon died on April 7, 2014. In May 2014, the Russell District Court entered an order probating Leon's will and appointing June as executor of Leon's estate. The probate petition listed Mark and June as petitioners and provided contact information for attorney Matthew DeHart. The petition was not signed. June and Mark filed a fiduciary bond and filed an inventory and appraisement of Leon's estate.

In November 2014, Damon filed an action in Russell Circuit Court challenging the validity of Leon's will and asserting claims of undue influence and breach of fiduciary duty by June and Mark. He also named other defendants in the complaint, including Suzanne and Cliff. Damon contended that the probate petition was defective because it was neither signed nor verified, among other reasons. Damon requested a declaration that the will was invalid, an accounting of estate assets, and the setting aside of certain transactions.

Suzanne and Cliff filed a joint answer to the complaint. They asked the trial court to protect their interests under the will and asked the trial court to declare that they did not violate any provision of the will, including the no-contest clause. The joint answer did not expressly assert any cross-claims or counterclaims.

3

In 2017, Suzanne and Cliff filed a motion for partial summary judgment against June and Mark. Specifically, the motion requested that the circuit court set aside the transfer of the real estate related to the tire business and an allegedly premature transfer of a tractor to Mark; asked the court to order certain proceeds and personal property be returned to Leon's estate; and sought the aid of the court to require Mark to account for all profits and receipts from the tire business since Leon's death.

June and Mark responded to the motion for partial summary judgment, arguing, among other things, that Suzanne and Cliff lacked standing to seek relief because they had asserted no claims against June and Mark. Damon also responded, indicating his agreement with the arguments Suzanne and Cliff made in their motion. After a hearing, the circuit court denied the motion as premature.

In August 2019, Damon settled his claims against June and Mark. A notice of dismissal acknowledging the settlement was filed with the circuit court by Damon's counsel on August 1, 2019.[2]

On August 6, 2019, Suzanne filed a motion styled as a motion for leave to amend her answer and to assert cross-claims and her objection to a dismissal of the action. Cliff did not join Suzanne's motion, but Suzanne

---

[2] In its opinion below, the Court of Appeals acknowledged that there was no dispute as to the filing of the notice of appeal but stated that it was neither provided with a copy of the notice of dismissal nor did the notice appear in the record. The notice of appeal appears in the record before this Court as Appendix 6 to Appellants' principal brief.

stated in the motion that neither she nor Cliff consented to dismissal of the action. An affidavit from Damon's counsel was attached to Suzanne's supporting memorandum in which Damon's counsel averred that counsel signed a notice of dismissal based on representations from June and Mark's counsel that June and Mark would delay filing the notice of dismissal, pending settlement negotiations with Suzanne and Cliff. In her tendered amended answer, Suzanne alleged that June and Mark tortiously interfered with a valid devise and breached fiduciary duties. She also sought a declaration that Leon lacked testamentary capacity and that June and Mark exercised undue influence.

After several hearings on Suzanne's motion for leave to amend, the circuit court took the matter under advisement without issuing any oral ruling. Then, on November 7, 2019, the circuit court issued the following order:

> Comes the Court on the defendant, Suzanne McGaha's, Motion to Amend Answer and to add Crossclaim against the defendants, June McGaha and Mark McGaha. The Court having read the memorand[a] and briefs of the parties in support thereof and against the motion, and the Court being sufficiently advised, it is hereby **ORDERED** and **ADJUDGED** that Suzanne McGaha's motion is hereby **OVERRULED** and consequently, as a result, there are no other issues before the Court in this matter with the plaintiff having settled his claim, and therefore, this action is hereby **DISMISSED AS SETTLED**. This is a final and appealable order and there is not just cause for delay.

Suzanne and Cliff appealed. Noting the "terse" nature of the circuit court's order, the Court of Appeals "presume[d] the trial court must have concluded that the cross-claim [Suzanne] wished to assert via amended answer was time-barred, given the five-year-plus age of the circuit court action."

5

Importantly, the Court of Appeals concluded that the district court lacked jurisdiction over the probate of Leon's will because the probate petition was not properly verified. Consequently, the Court of Appeals reasoned that the statute of limitations had not begun to run on Suzanne potential claims so that the trial court—presumably acting under the mistaken impression that Suzanne's claims were time barred—abused its discretion by denying Suzanne's motion to amend to assert her claims.

We granted June and Mark's motion for discretionary review and this matter is ripe for our review.

## II. STANDARD OF REVIEW

Jurisdiction is a question of law that we review de novo.[3] "Though CR[4] 15.01 provides that leave to amend "'shall be freely given when justice so requires,' it is still discretionary with the trial court[.]"[5] As such, we review the trial court's denial of a motion for leave to amend for abuse of discretion.[6]

Finally, when reviewing a motion to dismiss, "the pleadings should be liberally construed in the light most favorable to the plaintiff, all allegations being taken as true."[7] This eliminates the need for the trial court to make any

---

[3] *Commonwealth v. B.H.*, 548 S.W.3d 238, 242 (Ky. 2018).

[4] Kentucky Rule of Civil Procedure.

[5] *Graves v. Winer*, 351 S.W.2d 193, 197 (Ky. 1961) (quoting CR 15.01).

[6] *See id.*; *see also Bank One, Ky., N.A. v. Murphy*, 52 S.W.3d 540, 550 n.5 (Ky. 2001) (Keller, J., concurring in part and dissenting in part); *Bowling v. Commonwealth*, 981 S.W.2d 545, 548 (Ky. 1998) ("A trial court's ruling on a motion to amend will not be disturbed on appeal unless there has been a clear abuse of discretion.").

[7] *Fox v. Grayson*, 317 S.W.3d 1, 7 (Ky. 2010) (quoting *Morgan v. Bird*, 289 S.W.3d 222, 226 (Ky. App. 2009)).

findings of fact; "rather, the question is purely a matter of law. Stated another way, the court must ask if the facts alleged in the complaint can be proved, would the plaintiff be entitled to relief?"[8] As such, a reviewing court owes no deference to the trial court's determination and reviews a motion to dismiss de novo.[9]

### III. ANALYSIS

This case raises three primary issues for this Court's consideration: (1) did the district court lack jurisdiction over the probate action because of the alleged deficiencies with signatures and verification of the probate petition; (2) did the circuit court abuse its discretion by denying Suzanne's motion for leave to amend her answer to add new claims; and (3) did the circuit court err in dismissing this action? We address each issue in turn.

### A. The Court of Appeals erred in concluding that the district court lacked jurisdiction over the probate matter because of an alleged defect with verification of the probate petition.

Jurisdiction may well be a word of too many meanings.[10] At bottom, "[j]urisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause."[11]

---

[8] *Id.* (quoting *James v. Wilson*, 95 S.W.3d 875, 884 (Ky. App. 2002)).

[9] *Id.*

[10] *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 90 (1998).

[11] *Id.* (quoting *Ex Parte McCardle*, 7 Wall. 506, 514, 19 L. Ed. 264 (1868)).

KRS[12] 24A.120 gives the district court subject-matter jurisdiction in certain civil and probate matters. KRS 24A.120 provides, in pertinent part:

District Court shall have exclusive jurisdiction in:
. . .

2) Matters involving probate, except matters contested in an adversary proceeding. Such adversary proceeding shall be filed in Circuit Court in accordance with the Kentucky Rules of Civil Procedure and shall not be considered an appeal;

(3) Matters not provided for by statute to be commenced in Circuit Court shall be deemed to be nonadversarial within the meaning of subsection (2) of this section and therefore are within the jurisdiction of the District Court[.]

As a result, district courts are statutorily empowered with "exclusive" jurisdiction in non-adversarial probate matters.

Here, the Court of Appeals held that the district court lacked jurisdiction to probate the will because the probate petition was unsigned and unverified. Citing *Kentucky Unemployment Insurance Commission v. Wilson*[13] for support, the Court of Appeals concluded that strict compliance with the specific statutory requirement for verification was necessary to invoke the district court's jurisdiction.[14]

But the Court of Appeals' reliance on *Wilson* is an incongruous application of this Court's precedent regarding verification and its effect on jurisdiction. In *Wilson,* this Court held that strict compliance with a statutory

---

[12] Kentucky Revised Statutes.

[13] 528 S.W.3d 336 (Ky. 2017).

[14] *See id.* at 339.

requirement for verification for a petition for judicial review was required to invoke the circuit court's jurisdiction to review an administrative ruling.[15] But that legal conclusion in *Wilson* is grounded on the premise that "there is no appeal to the courts from an action of an administrative agency as a matter of right."[16] "When grace to appeal is granted by statute, a strict compliance with its terms is required."[17] So our holding in *Wilson* applies to review of administrative rulings in which there is no appeal in the courts as a matter of right. As a result, *Wilson* provides no support for the Court of Appeals' conclusion that the district court lacked jurisdiction in a matter unrelated to review of administrative appeals.

Relevant here, KRS 24A.120(2) grants district courts *exclusive jurisdiction* in non-adversarial probate matters. And the same statute requires that adversarial probate proceedings must be filed in the circuit court. So KRS 24A.120(2) grants district courts jurisdiction over non-adversarial probate matters; it does not, however, extend legislative grace to appeal where an appeal is otherwise not available as a matter of right.

It is true, of course, that KRS 394.145 requires that a verified petition be filed by a person offering a will for probate. But lack of proper verification of the probate petition did not divest the district court of subject-matter

---

[15] *See Wilson*, 528 S.W.3d at 339.

[16] *Id.* (internal alteration and citation omitted).

[17] *Id.* (internal citation omitted).

jurisdiction to entertain the petition to probate the will. The district court had subject-matter jurisdiction to probate the will under KRS 24A.120(2).

Nor did the alleged lack of proper verification divest the lower courts of jurisdiction over this particular case. We have acknowledged "that the use of the word 'jurisdiction' in this context is confusing."[18] In *Spears v. Goodwine*,[19] we clarified that "[t]he deficiency [of an unverified complaint seeking judicial review of an administrative order] has no effect on the circuit court's subject matter jurisdiction."[20] Instead, a deficiency in the verification of a complaint seeking judicial review of an administrative ruling leaves the "court without jurisdiction in this particular case."[21]

KRS 394.145 does not grant jurisdiction to the lower courts in probate matters. KRS 24A.120(2) does. That is not to say that the missing verification has no impact on lower courts' consideration of a probate petition. Here, the lower courts had jurisdiction to consider issues related to verification of the probate petition. In fact, Damon raised this very issue—claiming that the probate petition was defective because it was not properly verified. Again, KRS 24A.120(2) states that adversary proceedings involving probate matters "shall be filed in Circuit Court in accordance with the Kentucky Rules of Civil Procedure and shall not be considered an appeal." As a result, the district

---

[18] *See Wilson*, 528 S.W.3d at 339 n.2.

[19] 490 S.W.3d 347 (Ky. 2016).

[20] *Id.* at 352.

[21] *Id.* (citation omitted).

court had jurisdiction to probate the will at issue here and the circuit court had jurisdiction to review the impact of the alleged ineffective verification of the probate petition on the probate proceedings.[22]  Importantly, we note that Damon properly filed this original action in circuit court to challenge the district court's decision to admit the will to probate.[23]

Ultimately, the Court of Appeals' conclusion that the district court lacked jurisdiction to probate Leon's will was error.  Indeed, the Russell District Court had exclusive jurisdiction over any non-adversarial proceedings involving probate.  And the circuit court had jurisdiction over any adversarial proceedings, including whether the probate petition was properly verified.  As such, we reverse the Court of Appeals' holding that the district court lacked jurisdiction in this matter based on the allegedly ineffective verification of the probate petition.

**B. The circuit court did not abuse its discretion by denying Suzanne's motion for leave to amend her answer to assert cross-claims.**

We cannot conclude that the trial court clearly erred by denying Suzanne's motion to amend her answer.  While it is true that leave to amend

---

[22] *See Vater v. Vater's Adm'rs*, 113 S.W.2d 1145, 1146 (Ky. 1938) ("There is a rule of general application in this jurisdiction that an objection to a petition, answer, or other pleading for want of verification should be by rule against the pleader to verify and on his failure to do so to have it stricken.").  It is undisputed, however, that neither Suzanne nor Cliff objected to the alleged lack of verification until Suzanne attempted to amend her answer near the end of the proceedings in the trial court, years after Damon first raised this issue in his complaint.

[23] KRS 394.240(1).

"shall be freely given when justice so requires,"[24] the decision on whether to allow an amendment to an answer is within the trial court's discretion.

Here, the Court of Appeals erred by failing to give appropriate deference to the circuit court's ruling. The Court of Appeals concluded that the circuit court abused its discretion by denying Suzanne's motion to amend because the statute of limitations had not begun to run, the original probate petition being defective. But in so doing, the Court of Appeals "presumed" to know—without actually knowing—why the trial court denied Suzanne's motion for leave to amend and then proceeded to engage in its own de novo legal analysis concerning denial of the motion for leave to amend.

Having concluded that the district court had jurisdiction over the probate petition despite the alleged lack of proper verification, we must review the circuit court's denial of Suzanne's motion for leave to amend for abuse of discretion. "The test for abuse of discretion is whether the [ ] judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles."[25]

On this record, we cannot conclude that the circuit court clearly erred by denying Suzanne's motion for leave to amend her complaint. In 2014, Suzanne and Cliff's joint answer to Damon's complaint expressly disclaimed any challenge to Leon's will, stated that they did not join Damon's challenge, which included a claim that the probate petition was defective because it was not

---

[24] CR 15.01.

[25] *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999).

properly verified, and did not assert any cross-claims or counterclaims. Seemingly content to sit on their rights and allow Damon to prosecute the alleged improper verification of the probate petition, it was years later, in 2017, when Suzanne and Cliff moved for partial summary judgment. But neither Suzanne nor Cliff had asserted any cross-claims or counterclaims against June and Mark at that point. It was two years later, in 2019, and only after Damon reached extrajudicial settlement of his claims against June and Mark, that Suzanne sought to amend her initial answer to assert cross-claims that were available to her when she filed her initial answer in 2014.

Of course, we acknowledge, as the Court of Appeals did, the circuit court's November 2019 order was bare-bones. Even so, the circuit court was most familiar with the factual background and procedural history of this case. So the circuit court was best positioned to determine whether an amendment of Suzanne's complaint served the interests of justice. On these facts, even if we might have reached a different conclusion on de novo review, we cannot conclude that the circuit court abused its discretion in denying Suzanne's motion to amend her answer to assert cross-claims.

**C. Dismissal of this action was proper.**

On de novo review, we hold that dismissal of this action was proper. The circuit court's November 2019 order ruled that this action was dismissed as settled and noted that there were no other issues remaining before the court for consideration. On August 2, 2019, Damon filed a notice of dismissal, which stated, in relevant part, as follows:

13

The Plaintiff acknowledges that the above styled action has been dismissed as settled and that this effectively rescinds the **"Notice of Action Pursuant to KRS 394.240(2)"** filed in the office of the Russell County Circuit Court Clerk on November 10, 2014[,] and same being recorded in Miscellaneous Records Book 21, Page 63 and 64.

This is a notice that the previous filing is of no longer any force or effect in regard to any of the parties herein set forth above.

CR 41.01 deals with voluntary dismissal of an action by the plaintiff. Since Damon's notice of dismissal was filed after the defendants answered his complaint, the operative rule if CR 41.01(2), which states as follows:

**(2) By order of court.**

Except as provided in paragraph (1) of this rule, an action, or any claim therein, shall not be dismissed at the plaintiff's instance save upon order of the court and upon such terms and conditions as the court deems proper. If a counterclaim has been pleaded by a defendant prior to the service upon him of the plaintiff's motion to dismiss, the action shall not be dismissed against the defendant's objection unless the counterclaim can remain pending for independent adjudication by the court. Unless otherwise specified in the order, a dismissal under this section is without prejudice.

Here, dismissal of this action was proper because there were no active claims before the circuit court for consideration once Damon settled his claims against June and Mark. Again, Damon was the only plaintiff in this action as of August 2, 2019. That is so because Suzanne and Cliff expressly disclaimed any challenge to Leon's will and chose not to assert any counterclaims or cross-claims in their initial joint answer to Damon's complaint. And Suzanne did not file a motion to amend her answer to assert cross-claims until August 6, 2019. As such, once Damon settled his claims with June and Mark, there

14

were no remaining claims, counterclaims, or cross-claims for the circuit court to consider.

It is of no moment that the circuit court denied Suzanne's motion to amend her answer to assert cross-claims in the same order that dismissed the action. Again, we do not find that the circuit court's denial of Suzanne's motion to amend constituted abuse of discretion. Ultimately, upon denying Suzanne's motion to amend her answer to assert cross-claims, the only claims were those brought by Damon in his initial complaint, which had been dismissed.

Nor does it matter that Damon's counsel averred that he signed the notice of dismissal based on representations from June and Mark's counsel that they would delay filing the notice pending settlement negotiations with Suzanne and Cliff. Under CR 15.01, Suzanne was permitted to amend her answer "only by leave of court or by written consent of the adverse party." Suzanne had neither. So, upon settlement of Damon's claims, there was nothing for the remaining parties to settle.

Finally, contrary to Suzanne's characterizations, the claims she attempted to bring in her amended answer were not already before the court in her initial complaint. In their joint answer, Suzanne and Cliff asked the circuit court to generally protect their legal interests and declare the parties' rights under the will. But these general recitations are insufficient to bring adversarial claims under Leon's will, especially where Suzanne and Cliff initially explicitly disclaimed any challenge to the will. At bottom, in order to

15

advance the claims she now wishes to bring, Suzanne had to receive leave to amend her answer.

We acknowledge that this may seem to be a harsh result, especially since leave to amend should be freely given when justice so requires. But parties who sit on their rights do so at their own peril. The cross-claims Suzanne sought to assert in her amended answer were available to her when she filed her first joint answer in 2014. Suzanne sought to amend her answer in 2019 and only after Damon filed a notice of dismissal with the circuit court. As such, Suzanne's delay in litigating her claims justifies both denial of her motion for leave to amend and dismissal of the action generally.

In sum, once Damon's claims against June and Mark were settled as demonstrated by the notice, there were no active claims left in this action. Upon denial of Suzanne's later-filed motion to amend answer to assert cross-claims, there were similarly no active issues for the circuit court to resolve. As a result, dismissal without prejudice[26] was appropriate under CR 41.01(2).

## IV. CONCLUSION

After review, the district court properly exercised jurisdiction to probate the will in this action despite an allegedly improper verification of the probate petition and the circuit court had jurisdiction to consider adversarial claims arising from the probate action. Furthermore, we conclude that the circuit court did not abuse its discretion in denying Suzanne's motion for leave to

---

[26] CR 41.01(2) ("Unless otherwise specified in the order, a dismissal under this section is without prejudice.").

16

amend and assert cross-claims. Lastly, the circuit court properly dismissed this action because no claims remained for the circuit court to resolve upon settlement of Damon's claims with June and Mark. As a result, we reverse the decision of the Court of Appeals and reinstate the circuit court's order dismissing the action.

All sitting. All concur.


COUNSEL FOR APPELLANTS:

Matthew B. DeHart


COUNSEL FOR APPELLEES:

J. Robert Lyons, Jr.
Dinsmore & Shohl, LLP